*102*

United States District Court
Southern District of Texas
FILED

JUN 15 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

UNITED STATES OF AMERICA          §
                                  §
v.                                §          Criminal No.  **M - 21 - 1 2 2 8**
                                  §
JOHN AGEUDO RODRIGUEZ             §
MOHAMMAD IMTIAZ CHOWDHURY         §
TAJUL SHAMS CHOWDHURY             §
ARACELI GAONA                     §
ERIKA SALINAS VASQUEZ             §
ALEX FLORES, JR.                  §
HECTOR DELACRUZ, JR.              §

<u>SEALED INDICTMENT</u>

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment, unless otherwise stated:

**Federal Employees' Compensation Act**

1.      The Federal Employees' Compensation Act ("FECA") provided benefits to federal employees who suffered on the job injuries and diseases. The benefits included medical care and supplies, and prescription drugs.

2.      The Code of Federal Regulations ("CFR") governed the FECA program. The CFR stated that the submission of a bill and acceptance of payment by a provider signified that the service for which reimbursement was sought, was performed as described, necessary, appropriate, and properly billed in accordance with industry standards. The Department of Labor office of Workers Compensation Program ("DOL") administered the FECA Program. Pharmacies that enrolled with the National Council for Prescription Drug Programs ("NCPDP") were able to receive FECA program payments from DOL.

1

## TRICARE

3.      TRICARE was a federally funded health care program of the United States Department of Defense ("DOD") that provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

4.      TRICARE provided health care benefits for certain prescription drugs, including certain compound drugs, that were medically necessary and prescribed pursuant to TRICARE rules and regulations.  In order to pay a claim, TRICARE required that the billed item be medically necessary, properly prescribed by a licensed physician, and actually provided to a TRICARE beneficiary.

5.      TRICARE contracted with Express Scripts Incorporated to administer the prescription drug plan of the TRICARE program, including the processing and payment of claims.

## Medicare

6.      Medicare provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.

7.      Medicare Part D provided coverage for outpatient prescription drugs.  In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan.  Medicare drug plans were operated by private companies approved by Medicare, often referred to as drug plan sponsors.  A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

8.      A pharmacy could participate in the Medicare Part D program by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBM").

2

A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. Participating pharmacies could submit claims relating to Medicare Part D beneficiaries to their Medicare drug plan or the plan's PBM.

9.      Medicare reimbursed pharmacies for certain drugs, including compound drugs, that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular drug would be reimbursed by Medicare.

### Private Insurance

10.     Commercial insurance companies, employers, and private entities offered drug plans which were also administered and operated by PBMs (collectively "Private Insurance"). A pharmacy could participate in a Private Insurance drug plan by entering into an agreement with one or more PBMs acting on behalf of the drug plan. Participating pharmacies could submit claims to PBMs relating to prescriptions for Private Insurance beneficiaries.

### Health Care Benefit Programs – Federal Health Care Programs

11.     FECA, TRICARE, Medicare, and Private Insurance were all "health care benefit programs" as defined by Title 18, United States Code, Section 24(b) (collectively the "health care benefit programs").

12.     FECA, TRICARE, and Medicare were "Federal health care programs" as defined by Title 42, United States Code, Section 1320a-7b(f) (collectively the "Federal health care programs").

### Compound Drugs

13.     In general, "compounding" is a practice in which a licensed pharmacist, a licensed

3

physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.  Compound drugs are not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compound drugs.  The Texas State Board of Pharmacy regulates the practice of compounding in the State of Texas.

14.     Compound drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient.  For example, if a patient is allergic to a specific ingredient in an FDA-approved drug, such as a dye or a preservative, a compound drug can be prepared excluding the substance that triggers the allergic reaction.  Compound drugs may also be prescribed when a patient cannot consume a drug by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

**The Defendants, Related Individuals and Entities**

15.     JOHN AGEUDO RODRIGUEZ was a resident of Hidalgo County, Texas and a pharmacist licensed by the State of Texas.

16.     Pharr Family Pharmacy ("PFP") was a compounding and retail pharmacy owned and operated by JOHN AGEUDO RODRIGUEZ, and located on Cage Street in Pharr, Texas and doing business throughout the State of Texas and elsewhere.  PFP did business under various names, including United Mix and Custom Prescription Innovations.

17.     In connection with operating PFP, JOHN AGEUDO RODRIGUEZ utilized a number of entities, including, Jocar Management, LLC, a Texas limited liability company, and Pharmplex, Ltd. II, a Texas limited partnership.

4

18.     MOHAMMAD IMTIAZ CHOWDHURY was a resident of Hidalgo County, Texas, and a purported marketer for PFP.  MOHAMMAD IMTIAZ CHOWDHURY formed and operated an entity known as Echelon Medical Innovations, LLC a Texas limited liability company.

19.     TAJUL SHAMS CHOWDHURY, was a resident of Hidalgo County, Texas, and a physician licensed by the State of Texas.  TAJUL SHAMS CHOWDHURY owned and operated a medical clinic in Edinburg, Texas known as the Center for Pain Management.

20.     ARACELI GAONA was a resident of Hidalgo County, Texas and an employee of the Center for Pain Management.

21.     ERIKA SALINAS VASQUEZ was a resident of Hidalgo County, Texas and an employee of the Center for Pain Management.

22.     ALEX FLORES, JR. was a resident of Hidalgo County, Texas and a chiropractor licensed by the Texas Board of Chiropractic Examiners.

23.     HECTOR DELACRUZ, JR. was a resident of Hidalgo County, Texas and a chiropractor licensed by the Texas Board of Chiropractic Examiners.

24.     ALEX FLORES, JR. and HECTOR DELACRUZ, JR. formed and operated an entity known as Flores & De La Cruz Financial Solutions, LLC, a Texas limited liability company.

25.     "V.G." was a resident of Hidalgo County, Texas, and a purported marketer for PFP. V.G. formed an entity with the initials "P.M. LLC", a Texas limited liability company.

26.     "J.Y." was a resident of Hidalgo County, Texas, a purported marketer for PFP, and an operator of a clinic, doing business in Mission, Texas and elsewhere.

## COUNT 1
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### (18 U.S.C. § 1349)

27.    Paragraphs 1 through 26 are incorporated herein by reference.

28.    From in or around May 2014 and continuing through in or around September 2016,
the exact dates being unknown to the Grand Jury, in the McAllen Division of the Southern District
of Texas and elsewhere, defendants

**JOHN AGEUDO RODRIGUEZ
MOHAMMAD IMTIAZ CHOWDHURY
TAJUL SHAMS CHOWDHURY
ALEX FLORES, JR.
and
HECTOR DELACRUZ, JR.**

did knowingly and willfully combine, conspire, confederate and agree with each other and others,
known and unknown, to violate Title 18, United States Code, Section 1347, that is, to execute a
scheme and artifice to defraud a health care benefit program affecting commerce, as defined in
Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and
fraudulent pretenses, representations, and promises, money and property owned by, and under the
custody and control of, said health care benefit programs, in connection with the delivery of and
payment for health care benefits, items, and services.

### Purpose of the Conspiracy

29.    It was a purpose and object of the conspiracy for defendants and their co-
conspirators to unlawfully enrich themselves by submitting and causing the submission of false
and fraudulent claims to health care benefit programs for compound drugs and other prescription
items, including items that were not prescribed by a physician, were not medically necessary, and
were not wanted, needed, or used by patients.

6

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

30.    JOHN AGEUDO RODRIGUEZ, a licensed pharmacist, oversaw and directed operations at PFP relating to compound drugs and other prescription items.

31.    JOHN AGEUDO RODRIGUEZ enrolled, or caused to be enrolled, PFP with various health care benefit programs, giving PFP the ability to submit claims for prescriptions and receive payments relating to those claims.

32.    JOHN AGEUDO RODRIGUEZ solicited and recruited individuals referred to as "marketers" for the purpose of inducing the referral of high-reimbursing prescriptions for compound drugs and other prescription items to PFP that could be billed to health care benefit programs.

33.    The purported marketers recruited by JOHN AGEUDO RODRIGUEZ included MOHAMMAD IMTIAZ CHOWDHURY, ALEX FLORES, JR., HECTOR DELACRUZ, JR., V.G., and J.Y.

34.    JOHN AGEUDO RODRIGUEZ directed the purported marketers to target specific health care benefit programs that paid high reimbursements for compound drugs, including but not limited to compound pain creams, scar creams, vitamins, and other prescription items, such as pain patches.

35.    JOHN AGEUDO RODRIGUEZ provided the purported marketers with prescription drug pads, pre-filled with compound drugs and other prescription items that would yield the highest possible reimbursement from health care benefit programs.

36.    JOHN AGEUDO RODRIGUEZ paid illegal kickbacks to marketers, including

MOHAMMAD IMTIAZ CHOWDHURY, ALEX FLORES, JR., and HECTOR DELACRUZ, JR., to induce the marketers to refer high-reimbursing prescriptions for compound drugs to PFP that could be billed to health care benefit programs.

37.     Purported marketer MOHAMMAD IMTIAZ CHOWDHURY coordinated with his father, TAJUL SHAMS CHOWDHURY, a physician, to send prescriptions for compound drugs to PFP.

38.     TAJUL SHAMS CHOWDHURY sent, or caused to be sent, prescriptions for compound drugs and other prescription items to PFP for patients who did not need or want the drugs or items.

39.     In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made kickback payments to his father, TAJUL SHAMS CHOWDHURY, to induce the referral of prescriptions to PFP.

40.     In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made payments to employees of his father's medical clinic.

41.     MOHAMMAD IMTIAZ CHOWDHURY directed and coordinated with ARACELI GAONA and ERIKA SALINAS VASQUEZ to send, or cause to be sent, prescriptions for compound drugs and other prescription items to PFP for patients who did not need or want the drugs or items.

42.     MOHAMMAD IMTIAZ CHOWDHURY directed and coordinated with ARACELI GAONA and ERIKA SALINAS VASQUEZ to authorize, or cause to be authorized, refills for prescriptions for compound drugs and other prescription items to PFP for patients who did not need or want the drugs or items.

43.     In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made

kickback payments to Doctor-1 to induce the referral of prescriptions to PFP.

44.     In exchange for the kickback payments from MOHAMMAD IMTIAZ CHOWDHURY, Doctor-1 referred prescriptions for high-reimbursing compound drugs and other prescription items to PFP, including prescriptions that were not medically necessary.

45.     In furtherance of the conspiracy, ALEX FLORES, JR. and HECTOR DELACRUZ, JR., made kickback payments directly and indirectly to Doctor-2 in order to induce the referral of prescriptions to PFP.

46.     In exchange for the kickback payments from ALEX FLORES, JR. and HECTOR DELACRUZ, Doctor-2 referred prescriptions for high-reimbursing compound drugs and other prescription items to PFP, including prescriptions that were not medically necessary and were not wanted by the patient.

47.     In furtherance of the conspiracy, purported marketer V.G. made kickback payments directly and indirectly to multiple physicians, including Doctor-3 and Doctor-4 in order to induce the referral of prescriptions to PFP.

48.     In exchange for the kickback payments from V.G., and in furtherance of the conspiracy, Doctor-3 referred prescriptions for high-reimbursing compound drugs and other prescription items to PFP, including prescriptions that were not medically necessary.

49.     In coordination with V.G., Doctor-3 recruited Doctor-4 to refer prescriptions to PFP in exchange for kickbacks.

50.     In furtherance of the conspiracy, and with direction and input from JOHN AGEUDO RODRIGUEZ, purported marketer, J.Y., opened and operated a clinic with the purpose and intent of generating high-reimbursing prescriptions for compound drugs to send to PFP.

51.     In furtherance of the conspiracy, J.Y. made kickback payments to Nurse

Practitioner-1 to induce the referral of prescriptions to PFP.

52.     In exchange for the kickback payments from J.Y., Nurse Practitioner-1 referred prescriptions for high-reimbursing compound drugs and other prescription items to PFP, including prescriptions that were not medically necessary, and for patients not seen by Nurse Practioner-1.

53.     In furtherance of the conspiracy, J.Y. and his co-conspirators paid kickbacks to Soldier-1, a member of the United States Military, to refer prescriptions for himself and other members of the United States Military and their family members for high-reimbursing compound drugs and other prescription items to PFP.

54.     In furtherance of the conspiracy, and in exchange for the kickback payments from J.Y., Soldier-1 caused the referral of prescriptions for high-reimbursing compound drugs and other prescription items for himself and other members of the United States Military and their family members to PFP, including prescriptions that were not medically necessary, and for patients not seen by a physician.

55.     JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to create specific formulations for compound drugs based on achieving the highest possible reimbursement from health care benefit programs, rather than medical necessity.

56.     JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to submit false and fraudulent claims to health care benefit programs in order to "fish" for compound drug formulations that would yield high reimbursements.

57.     JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to create prescription pads pre-filled with specific formulations for compound drugs and other prescription items that would yield high reimbursements from health care benefit programs.

58.    JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to submit false and fraudulent claims for compound drugs and other prescription items that were not prescribed by a doctor, and were not wanted or needed by the patient.

59.    JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to ignore prescriptions as written by physicians and instead bill health care benefit programs for the highest reimbursing compound drugs and other prescription items.

60.    JOHN AGEUDO RODRIGUEZ directed and caused co-conspirators and employees of PFP to create false and fraudulent "telephone prescriptions" and physician approvals making it appear that a physician had authorized a change to a prescription.

61.    JOHN AGEUDO RODRIGUEZ, in violation of health care benefit plan rules and regulations, directed and caused purported marketers and employees of PFP to not collect required patient co-pays for prescriptions for compound drugs and items.

62.    JOHN AGEUDO RODRIGUEZ and his co-conspirators concealed and attempted to conceal the failure to collect co-pays in violation of health care benefit plan rules and regulations by creating fictitious payments and payment accounts.

63.    JOHN AGEUDO RODRIGUEZ and his co-conspirators directed employees of PFP to forge patient signatures on false and fraudulent delivery tickets for prescription compound medication and other items.

64.    During the time period covered by the conspiracy, JOHN AGEUDO RODRIGUEZ submitted, or caused the submission, of claims totaling approximately $95 Million to FECA, resulting in payments of approximately $41 Million from FECA to PFP.

65.    During the time period covered by the conspiracy, JOHN AGEUDO RODRIGUEZ submitted, or caused the submission, of claims totaling approximately $9.8 Million to TRICARE,

resulting in payments of approximately $8 Million from TRICARE to PFP.

66.     During the time period covered by the conspiracy, JOHN AGEUDO RODRIGUEZ

submitted, or caused the submission, of claims resulting in payments of approximately $6 Million

from Medicare to PFP.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 through 13
## HEALTH CARE FRAUD
## (18 U.S.C. § 1347)

67.     Paragraphs 1 through 26 and 30 through 66 are incorporated herein by reference.

### The Scheme to Defraud

68.     From in or about May 2014 and continuing through in or about September 2016,

the exact dates being unknown to the Grand Jury, in the Southern District of Texas and elsewhere,

defendants

**JOHN AGEUDO RODRIGUEZ**
**MOHAMMAD IMTIAZ CHOWDHURY**
**TAJUL SHAMS CHOWDHURY**
**ALEX FLORES, JR.**
**and**
**HECTOR DELACRUZ, JR.**

along with others known and unknown to the Grand Jury, in connection with the delivery of and

payment for health care benefits, items, and services, did knowingly and willfully execute, and

attempt to execute, a scheme and artifice to defraud a health care benefit program affecting

interstate commerce, as defined in Title 18, United States Code, Section 24(b), that is, FECA, and

to obtain by means of materially false and fraudulent pretenses, representations, and promises,

money and property owned by and under the custody and control of FECA.

12

**Execution of the Scheme**

69.     On or about the dates listed below, in the Southern District of Texas, and elsewhere, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, the defendants named in the counts below, caused the transmission of the following claims to FECA, which were for the patient, prescription number, approximate fill dates, and approximate amounts listed below.

| Count | Defendant/s | Patient Initials | Rx # | Fill Date | FECA Billed Amount | FECA Paid Amount |
|-------|-------------|------------------|------|-----------|--------------------|--------------------|
| 2 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | M.B. | 130776 | 6/20/16 | $17,918.59 | $12,917.68 |
| 3 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | M.B. | 130800 | 7/19/16 | $12,616.04 | $3,825.31 |
| 4 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | E.T. | 129704 | 6/21/16 | $17,918.59 | $12,917.68 |
| 5 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | E.T. | 129705 | 6/21/16 | $18,498.49 | $12,948.94 |
| 6 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | E.T. | 70006916 | 6/21/16 | $13,359.44 | $9,537.51 |
| 7 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury Tajul Shams Chowdhury | E.T. | 122814 | 7/16/16 | $17,918.59 | $5,536.15 |
| 8 | John Ageudo Rodriguez Alex Flores, Jr. Hector DelaCruz, Jr. | J.K. | 128704 | 6/20/16 | $17,918.59 | $12,917.68 |
| 9 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury | J.P. | 133604 | 6/21/16 | $17,918.59 | $12,917.68 |
| 10 | John Ageudo Rodriguez Mohammad Imtiaz Chowdhury | J.P. | 133604 | 7/19/16 | $17,918.59 | $5,536.15 |
| 11 | John Ageudo Rodriguez | V.B. | 128541 | 6/21/16 | $25,645.07 | $17,951.55 |

| 12 | John Aguedo Rodriguez | Y.C. | 131978 | 7/29/16 | $4,133.42 | $2,477.95 |
| 13 | John Aguedo Rodriguez | S.D. | 133178 | 6/28/16 | $21,276.68 | $14,899.31 |

All in violation of Title 18, United States Code, Section 1347 and Title 18, United States

Code, Section 2.

## COUNT 14
### CONSPIRACY TO PAY AND RECEIVE HEALTH CARE KICKBACKS
### (18 U.S.C. § 371)

70.     Paragraphs 1 through 26 and 30 through 66 are incorporated herein by reference.

71.     From in or around May 2014 and continuing through in or around September 2016,

the exact dates being unknown to the Grand Jury, in the Southern District of Texas and elsewhere,

defendants

**JOHN AGUEDO RODRIGUEZ**
**MOHAMMAD IMTIAZ CHOWDHURY**
**TAJUL SHAMS CHOWDHURY**
**ARACELI GAONA**
**ERIKA SALINAS VASQUEZ**
**ALEX FLORES, JR.**
**and**
**HECTOR DELACRUZ, JR.**

did knowingly and willfully combine, conspire, confederate and agree with others, known and

unknown, to commit certain offenses against the United States, that is:

a.     to violate Title 42, United States Code, Section 1320a-7b(b)(1), by

knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes,

directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing

and arranging for the furnishing of any item and service for which payment may be made in whole

or in part by a Federal health care program, and for the purchasing, leasing, ordering and arranging

for and recommending the purchasing, leasing and ordering of any good, item, and service for

14

which payment may be made in whole and in part by a Federal health care program; and

      b.     to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole or in part by a Federal health care program.

### Purpose of the Conspiracy

72.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of prescriptions for compound drugs and other prescription items for which claims could be submitted to Federal health care programs.

### Manner and Means of the Conspiracy

     The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

73.     JOHN AGEUDO RODRIGUEZ made numerous kickback payments to purported marketers to induce the referral of prescriptions for compound drugs and other prescription items to PFP, for which claims were submitted to Federal health care programs.

74.     The kickback payments made by JOHN AGEUDO RODRIGUEZ were based on the amount health care benefit programs, including Federal health care programs, reimbursed PFP for claims submitted for prescriptions for compound drugs and other prescription items.

75.     JOHN AGEUDO RODRIGUEZ paid kickbacks to purported marketers based on

the amount paid by Federal health care programs, less the pharmacy's costs, for prescriptions referred through the purported marketers to PFP, including prescriptions for beneficiaries of Federal health care programs.

76.     In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ made kickback payments totaling approximately $6.6 Million to MOHAMMAD IMTIAZ CHOWDHURY.

77.     The kickback payments from JOHN AGEUDO RODRIGUEZ to MOHAMMAD IMTIAZ CHOWDHURY included payments for prescriptions referred by his father, TAJUL SHAMS CHOWDHURY relating to Federal health care benefit programs.

78.     MOHAMMAD IMTIAZ CHOWDHURY directed and coordinated with ARACELI GAONA and ERIKA SALINAS VASQUEZ to send, or cause to be sent, prescriptions for compound drugs and other prescription items to PFP.

79.  .   In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made or caused to be made, payments to ARACELI GAONA and ERIKA SALINAS VASQUEZ.

80.     The kickback payments from JOHN AGEUDO RODRIGUEZ to MOHAMMAD IMTIAZ CHOWDHURY included payments for prescriptions referred by Doctor-1 relating to Federal health care benefit programs.

81.     In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ made kickback payments totaling approximately $8 Million to ALEX FLORES, JR. and HECTOR DELACRUZ, JR.

82.     The kickback payments from JOHN AGEUDO RODRIGUEZ to ALEX FLORES, JR. and HECTOR DELACRUZ, JR. included payments for prescriptions referred by Doctor-2 and other physicians relating to Federal health care benefit programs.

83.     In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ made kickback

16

payments totaling approximately $7.6 Million to V.G.

84.     The kickback payments to V.G. included payments for prescriptions referred by Doctor-3 and other physicians relating to Federal health care benefit programs.

85.     In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ made kickback payments totaling approximately more than $700,000 to PFP-Employee-1.

86.     The kickback payments to PFP-Employee-1, under an assumed name with the initials "M.V.C.," included payments for prescriptions referred by Doctor-3 and other physicians relating to Federal health care benefit programs.

87.     In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ made kickback payments totaling approximately $1.3 Million to J.Y.

88.     The kickback payments to J.Y. included payments for prescriptions referred by Nurse Practitioner-1, other physicians, and Soldier-1, including prescriptions relating to Federal health care benefit programs.

**Overt Acts**

89.     In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Southern District of Texas, the following overt acts:

a.     On or about the dates set forth below, each of which constitutes a separate overt act, conspirator JOHN AGEUDO RODRIGUEZ paid money using checks drawn on the account of JOCAR Management at Lone Star National Bank, account number ending in 5815, to the co-conspirators, in the approximate amounts listed below:

| Overt Act | Date | Amount | Check No. | Payee |
|---|---|---|---|---|
| a.1 | 6/30/16 | $481,773.16 | 3183 | Echelon Medical |

| a.2 | 6/30/16 | $550,598.98 | 3184 | Flores & De la Cruz Financial Solutions |
| a.3 | 6/30/16 | $117,106.14 | 3192 | "P.M. LLC" |
| a.4 | 6/30/16 | $34,455.08 | 3195 | "M.V.C." |

All in violation of Title 18, United States Code, Section 371.

## COUNT 15
## CONSPIRACY TO COMMIT MONEY LAUNDERING
### (18 U.S.C. § 1956(h))

90.     Paragraphs 1 through 26, 30 through 66, and 73 through 88 are incorporated herein by reference.

91.     From in or around May 2014 and continuing through in or around September 2016, the exact dates being unknown to the Grand Jury, in the Southern District of Texas and elsewhere, defendants

**JOHN AGEUDO RODRIGUEZ
MOHAMMAD IMTIAZ CHOWDHURY
TAJUL SHAMS CHOWDHURY
ARACELI GAONA
ERIKA SALINAS VASQUEZ
ALEX FLORES, JR.
and
HECTOR DELACRUZ, JR.**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others, known and unknown, to commit certain offenses against the United States in violation of Title 18, United States Code, Section 1956 and 1957, to wit:

a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, health care fraud and conspiracy to commit health care fraud, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b.    to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved proceeds of specified unlawful activity, that is, illegal kickbacks and conspiracy to pay and receive illegal kickbacks, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

c.    to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1957.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

92.    It was part of the conspiracy that defendants would cause health care benefit programs to remit payment of the proceeds of the health care fraud scheme into bank accounts controlled by JOHN AGEUDO RODRIGUEZ.

93.    It was a part of the conspiracy that JOHN AGEUDO RODRIGUEZ would transfer proceeds of the health care fraud scheme to defendants and their co-conspirators.

94.    In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made regular cash payments to his father, TAJUL SHAMS CHOWDHURY from the amounts paid to MOHAMMAD IMTIAZ CHOWDHURY from JOHN AGEUDO RODRIGUEZ.

95.    In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made regular cash payments to Doctor-1 from the amounts paid to MOHAMMAD IMTIAZ CHOWDHURY from JOHN AGEUDO RODRIGUEZ.

96.    In furtherance of the conspiracy, MOHAMMAD IMTIAZ CHOWDHURY made payments to ARACELI GAONA and ERIKA SALINAS VASQUEZ from the amounts paid to MOHAMMAD IMTIAZ CHOWDHURY from JOHN AGEUDO RODRIGUEZ.

97.    MOHAMMAD IMTIAZ CHOWDHURY falsely disguised the payments to ARACELI GAONA and ERIKA SALINAS VASQUEZ as purported payments to their respective spouses for contract work.

98.    In furtherance of the conspiracy, ALEX FLORES, JR. and HECTOR DELACRUZ, JR. made payments to Doctor-2 from the amounts paid to ALEX FLORES, JR. and HECTOR DELACRUZ from JOHN AGEUDO RODRIGUEZ.

99.    ALEX FLORES, JR. and HECTOR DELACRUZ falsely disguised payments to Doctor-2 as purported payments related to a business venture.

100.    ALEX FLORES, JR. and HECTOR DELACRUZ falsely disguised payments to Doctor-2 as purported payments to a relative of Doctor-2.

101.    In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ directed V.G. to conceal kickbacks by creating the entity "P.M. LLC" to make it appear that the payments related to legitimate marketing and consulting activities.

102.    To conceal payments to Doctor-3, JOHN AGEUDO RODRIGUEZ directed V.G.

to make payments to Doctor-3 from the amounts paid by JOHN AGEUDO RODRIGUEZ to V.G.

103. To conceal payments to Doctor-3, JOHN AGEUDO RODRIGUEZ directed V.G. to make payments to Doctor-3 from the entity "P.M. LLC" to make it falsely appear that the payments related to legitimate marketing and consulting activities.

104. In furtherance of the conspiracy, JOHN AGEUDO RODRIGUEZ directed PFP-Employee-1 to create an entity to receive kickback payments, including payments relating to Doctor-3.

105. At the direction of JOHN AGEUDO RODRIGUEZ, PFP-Employee-1 created the assumed name "M.V.C", to make it appear that the payments related to legitimate marketing and consulting services.

106. In furtherance of the conspiracy, J.Y. made payments to Nurse Practitioner-1 from the amounts paid to J.Y. from JOHN AGEUDO RODRIGUEZ.

107. In furtherance of the conspiracy, J.Y. made payments to Soldier-1 from the amounts paid to J.Y. from JOHN AGEUDO RODRIGUEZ.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE
## (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants JOHN AGEUDO RODRIGUEZ, MOHAMMAD IMTIAZ CHOWDHURY, TAJUL SHAMS CHOWDHURY, ARACELI GAONA, ERICA SALINAS VASQUEZ, ALEX FLORES, JR., AND HECTOR DELACRUZ, JR. that upon defendants' conviction of Counts 1 through 14 charged in this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## NOTICE OF FORFEITURE
## (18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants JOHN AGEUDO RODRIGUEZ, MOHAMMAD IMTIAZ CHOWDHURY, TAJUL SHAMS CHOWDHURY, ARACELI GAONA, ERICA SALINAS VASQUEZ, ALEX FLORES, JR., AND HECTOR DELACRUZ, JR. that upon defendants' conviction of Count 15 charged in this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant[s]:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).  All pursuant to 18 U.S.C. § 982(a)(7)

and 28 U.S.C. § 2461(c).


                           JENNIFER B. LOWERY
                           ACTING UNITED STATES ATTORNEY

A TRUE BILL:

                           Andrew R. Swartz
                           Assistant United States Attorney

Grand Jury Foreperson

                           Asha M. Natarajan
                           Assistant United States Attorney